IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN PAUL COOPER (02)<br>WALTER NEIL SIMMONS (03)<br>WILLIAM F. ELDER-QUINTANA (04)<br>JEFFRY DOBBS COCKERELL (07)<br>STEVEN BERNARD KUPER (08)<br>MICHAEL JOHN KISELAK (12) | NO.  3:16-CR-60-M |

**GOVERNMENT'S SECOND OMNIBUS RESPONSE TO
DEFENDANTS' PRETRIAL MOTIONS IN LIMINE**

The United States of America ("government"), by and through its counsel, submits this omnibus response to the second round of defendants' pretrial motions in limine (ECF Nos. 695, 702, 703, 704, 708, 721).

**I.      Cooper's Motions in Limine**

Citing no legal authority, defendant Cooper seeks an order requiring the government to approach the bench and request a hearing outside the presence of the jury prior to sponsoring any testimony on five topics. (ECF 695 at 1.). The government responds as follows:

**A.      Proffer Statements – Not Opposed**

The government agrees to approach the bench and seek a ruling prior to sponsoring statements Cooper made pursuant to a proffer agreement.

To assist the Court, a copy of the proffer agreement, which outlines the mutually agreed-upon terms concerning the use of Cooper's statements, is attached. The proffer agreement states, among other things:

> If, at any stage of any trial or other proceeding, [Cooper] or anyone on his behalf offers or elicits evidence, assertions, representations, or arguments that are inconsistent with information supplied by [Cooper] during the proffer meeting, [the U.S. Attorney's Office] may use proffer information to rebut or refute the inconsistent information through impeachment, cross-examination, introduction of the proffer information as evidence, and/or through argument.

To further assist the Court in determining whether Cooper or his counsel have "opened the door" to the proffer information, the government provides notice of the following information provided by Cooper during a proffer interview, which may become admissible under the terms of the proffer agreement:

- During the proffer interview, Cooper was asked what he thought he did wrong during his time at CMGRX. Cooper replied that he should have thought more about using the Freedom From Pain Foundation to pay patients because "it didn't feel right." He admitted that he should not have "donated to a charity that furthered the scheme." He explained that he joined CMGRX after it was already operational, but stated that he would take responsibility for his actions.

- During the interview, Cooper said he felt that his now codefendants Baumiller, Straw, Simmons, Elder-Quintana, and Rios should also be charged due to their involvement. Cooper further specified that Baumiller provided a lot of direction to other people, that Rios brought so many patients that it did not seem right to him, and that Dr. Elder-Quintana improperly used telemedicine in lieu of face-to-face visits to speed up the prescribing process.

- Cooper also made a number of admissions that undercut his ability to rely on the bona fide employee exception to the Anti-Kickback Statute violations he is facing. Cooper admitted that the CMGRX employees becoming employees of Trilogy was "basically a cover story." He explained how, other than filling out some employment paperwork and taking some occasional training, the day-to-day operations did not change. When patients and sales reps logged on to the website, all they saw was CMGRX and nothing about Trilogy. Cooper also admitted the he and Baumiller discussed backdating taxes to make it appear like CMGRX's sales reps were W-2 employees of Trilogy Pharmacy longer than they actually were.

### B. Plans to Flee Prior to Arrest – Opposed

Cooper told multiple people that he would flee to Costa Rica if he or CMGRX got in trouble. A defendant's statements concerning planned flight are relevant and admissible as they reflect his state of mind, intent, and knowledge. *United States v. Barnhart*, 889 F.2d 1374, 1378 (5th Cir. 1989). Because Cooper was arrested before he could flee, the government has not asked the Court to give a flight instruction. *See id.*

The government should not be required to approach the bench before sponsoring this testimony.

### C. Threats to Others Related to this Case – Opposed

Evidence that a defendant threatened witnesses or potential witnesses against him is admissible because it relates to the defendant's consciousness of guilt and is probative of an issue other than his character. *United States v. Rocha*, 916 F.2d 219, 241 (5th Cir. 1990). Accordingly, any such evidence should be admissible without a special hearing.

### D. Cooper's Prior Detention – Opposed

Cooper told Cesario that he had $3 million and would take care of him if Cesario agreed not to testify against him. The timing, facts, and circumstances surrounding this conversation—in a holding cell in the federal courthouse—is relevant and should be admissible. Additionally, government witnesses may testify about statements Cooper made to them while they were incarcerated together.

This evidence should be admissible without requiring a hearing outside the presence of the jury.

### E. 404(b) evidence – Opposed

The government will provide 404(b) notice to Cooper and offer any such evidence in accordance with the Court's prior ruling. (ECF 694 at 5.) To the extent Cooper requests additional relief beyond that ruling, the government is opposed.

## II. All Defendants' Motion in Limine Regarding Opinion Testimony – Not Opposed

Defendants Cooper, Simmons, Elder-Quintana, Cockerell, Kuper, and Kiselak filed a joint motion in limine regarding expert and lay opinion testimony. (ECF 702.)

The government does not intend to offer any expert opinion testimony in this case pursuant to FRE 702. The government and the defendants appear to agree that FRE 701 governs the admissibility of lay opinion testimony. Accordingly, the government is not opposed to the defendants' motion.

### III. All Defendants' Motion in Limine Regarding Summary Evidence and Testimony – Opposed

Defendants Cooper, Simmons, Elder-Quintana, Cockerell, Kuper, and Kiselak filed a joint motion in limine regarding summary evidence and summary testimony. (ECF 703.)

The government is aware of, and intends to comply with, the rules governing summary evidence, including FRE 1006, which requires that (1) the underlying material is voluminous, and (2) the material cannot be examined conveniently by the trier of fact. Although it is not necessary that the underlying voluminous material is offered into evidence (but it can be), admission of the charts necessitates that the primary evidence used to construct the charts is made available to the other side for comparison so that the correctness of the summary may be tested, the chart preparer is available for cross-examination, and the jury is properly instructed concerning the use of the charts. *United States v. Valencia*, 600 F.3d 389, 417-418 (5th Cir. 2010); *United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001); *United States v. Jennings*, 724 F.2d 436, 442 (5th Cir. 1983) ("The most commonly recognized application of this principle is that by which the state of pecuniary accounts or other business transactions is allowed to be shown by a witness's schedule or summary.") (quoting 4 Wigmore, *Evidence* § 1230 at 537 (Chadbourn rev. 1972) (emphasis in original)). Moreover, "summaries admitted under Rule 1006 may go to the jury room." *Bishop*, 264 F.3d at 548.

In this case, the government marked several summary charts as exhibits that are supported by voluminous records. The chart preparers will be called to testify about their

review of the underlying documents, the voluminous nature of the documents, and the information summarized, and they will be available for cross-examination regarding such testimony. The primary evidence used to construct the charts is admissible, was produced in discovery, has been marked as government exhibits, and will likely be offered into evidence.

The government does not intend to call a summary witness to recap or paraphrase the testimony of prior trial witnesses, or as a substitute for closing argument.

It appears that the only disagreement between the parties is whether the government must seek a ruling from the court regarding the admissibility of summary charts and testimony about them prior to offering them in court. The government believes the Court is well equipped to make these rulings as the exhibits and testimony are offered, and that defendants' request would serve only to waste time. Accordingly, the government is opposed to the defendants' motion.[1]

### IV. Simmons' Motion in Limine Regarding Summary Testimony – Opposed

In addition to joining the other defendants' motion regarding summary evidence, Simmons moves separately regarding summary testimony. (ECF 708 at 5-9.) His motion, however, goes much further, and should also be denied.

Simmons first takes issue with Rule 1006's requirement that the underlying records be made available to the defense, taking a gratuitous stab at the government's

---

[1] Defendant Elder-Quintana listed four summary witnesses on his witness list. (ECF 720.) The government requests that the Court apply the same rules to his summary witnesses as it applies to the government's summary witnesses.

discovery productions with reference to "Where's Waldo." However, as this Court is well aware and has previously noted, "The Court has granted multiple continuances so Defendants could facilitate a review of the Government's disclosures. […] Furthermore, the Government has provided the disclosures in a searchable format, and the Court granted Defendant's Motion to appoint coordinating discovery counsel." (ECF 695 at 4.) The government did not camouflage any documents by hiding them within a larger set of documents, and government prosecutors and paralegals have been continuously available and have promptly responded to defense counsel's inquiries regarding discovery. Moreover, the government has listed the underlying records supporting the summary charts on the government's exhibit list.

Citing the Sixth Amendment's right of confrontation and FRE 602, Simmons next erroneously argues that the government must establish, prior to introducing summary exhibits or testimony, that the witness has not only reviewed and analyzed otherwise admissible material but also has actual personal knowledge of the underlying records or evidence. This argument suggests that only an eyewitness to the financial transactions at the time such events occurred could testify about them, but he cites no authority for this proposition. Here, the witnesses testifying about the charts have personal knowledge of the charts' creations and the review of the underlying information and records contained in the summaries.

Lastly, Simmons erroneously argues that summaries of financial documents must be kept from the jury because the government has been unable to open CMGRX's password-protected QuickBooks files. Despite have never seen what is in these files,

Government's Second Omnibus Response to
Defendants' Pretrial Motions In Limine—Page 7

Simmons nevertheless claims that they are "critical documents," and that they must be examined before *any* financial summary is admitted.  None of the summary evidence or testimony that the government intends to offer is based on the QuickBooks files.

Simmons' motion should be denied.

### V.     Kiselak's Motion in Limine Regarding Uncharged Crimes / 404(b) Evidence – Opposed

Kiselak moves to exclude uncharged acts of misconduct.  (ECF 704.)

The government will provide 404(b) notice to Kiselak and offer any such evidence in accordance with the Court's prior ruling.  (ECF 694 at 5.)  To the extent Kiselak requests additional relief beyond that ruling, the government is opposed.

### VI.    Elder-Quintana's Motion in Limine Regarding the Name of the Investigation – Opposed

Law enforcement agencies sometimes give their investigations creative code-names such as "Operation Hypocritical Oath," "The Cream Scheme," or "Operation Medical Malice."  Defendant Elder-Quintana seeks a hearing outside the presence of the jury before any witness mentions the unremarkable name initially given to this case, "Elder-Quintana investigation."  (ECF 721.)  While Elder-Quintana correctly points out that this case grew to involve many other defendants, the evidence will show that, as the highest prescribing physician in the country in terms of dollar amount, the investigation did indeed start with him.

Moreover, no unfair prejudice could possibly result from the jury learning that Elder-Quintana was under investigation prior to being charged in this case.  That being said, the government does not intend to focus on the name of the investigation as

evidence of anything in and of itself. The defendant's motion is overbroad and unnecessary and should, therefore, be denied.

### VII. Simmons's Motions in Limine

In addition to those topics referenced above in which Simmons joined, Simmons seeks an order requiring the government to approach the bench and request a hearing outside the presence of the jury prior to sponsoring any testimony on six additional topics. (ECF 708.). The government responds as follows:

#### A. Regulatory & legal requirements – Opposed

The government expects that several lay fact witnesses will testify about actions they took (or refrained from taking), and communications they made based on their personal understanding of various laws and regulations. The government understands the Court is tasked with instructing the jury regarding the law applicable to this case. That does not mean, however, that lay fact witnesses may not talk about their own understanding of various legal or regulatory requirements, especially when that understanding informed their actions in this case.

A limiting instruction from the Court clarifying that such a witness's understanding is only that—their personal understanding and not the law they must follow—easily cures any potential for unfair prejudice or confusion.

#### B. *Bruton* Statements – Unopposed

The government agrees to approach the bench and seek a ruling outside the presence of the jury prior to offering any admissions of a defendant that may implicate a co-defendant.

### C.    Victimizing the Jury – Opposed

The government should be permitted to present evidence and make argument concerning the fact that TRICARE is funded by taxpayers and that the defendants' actions led to losses in excess of $100 million.  In health care fraud trials involving public health care programs, the government frequently proves the "interstate commerce" element with evidence that the programs are supported by taxes that are collected across state lines, and intends to do so here.

The government understands that it would be improper to tell the jurors that they, personally, are victims of the defendants' crimes, but nothing should prevent the government from educating the jury with evidence, testimony, and argument, that TRICARE is funded by taxpayers generally.  *See United States v. Robichaux*, 995 F.2d 565, 570 (5th Cir. 1993) (finding no undue prejudice where prosecutor suggested that defendant's crime harmed all Louisiana citizens and all those who seek to purchase insurance"); *see also United States v. Smyth*, 556 F.2d 1179, 1185 (5th Cir. 1977) (approving curative instruction that jurors "are not to consider that statement for the reason that it's a personal appeal to you.  It's alright for [the prosecutor] to argue that tax money is paying for it but (not) the portion about your tax money hurting you" in response to prosecutor's argument that "when you think about that, think of that, that's your tax money, that's your tax money being kicked in here").

## VIII. Non-Contextual Examination of Documents – Opposed

Simmons argues that, unless a prior ruling is obtained from the Court, no witness should be permitted to engage in a "non-contextual examination of a document" unless he has personal knowledge of the creation and use of the document.

To the extent the government understands this request, it is opposed. The government intends to offer multiple emails, text messages, and other documents authored or adopted by the defendant, each of which is admissible as a non-hearsay statement of a party opponent. Where a government witness is the recipient of such a communication, that witness may testify about the communication, even though they may lack personal knowledge regarding Simmons' creation of it. For those communications that are solely between Simmons and a non-testifying codefendant, the government intends to offer them under the co-conspirator exception to the hearsay rule and have them read into the record by a witness with no personal knowledge of the creation of the communications, as is routinely done in virtually every white-collar conspiracy case.

## IX. Bolstering by Plea Agreement – Opposed

The defense seeks to preclude the government offering evidence regarding the terms of its plea agreements with cooperating defendants, erroneously claiming that they amount to improper bolstering. The government does not intend to improperly bolster any witness testimony or personally vouch for the credibility of any witness. However, during examination of witnesses who have entered into plea agreements, the government should be permitted to ask questions regarding the witnesses understanding of his or her obligations under the agreement, including the obligation to tell the truth, and the about

his or her understanding of the potential ramifications if he or she does not tell the truth. This is not "bolstering"; it is proper examination. *See United States v. Binker*, 795 F.2d 1218, 1223 (5th Cir. 1986) ("Having reviewed the record, we determine that the government's questioning of the witnesses about their plea agreements was not improper. The government merely elicited from each witness a description of the witness' promise to testify truthfully in exchange for reduced charges and the government's promise to inform the sentencing judge of the witness' cooperation.").

### X.     Personal Behavior/Drug Use – Opposed

Defendant Simmons also seeks to keep out any evidence of drug use, alcohol use, and sexual indiscretions. This request is overbroad and vague.

To the extent drugs and alcohol were used by any of the co-conspirators while working at CMGRX, doing "consults of patients," writing prescriptions, or filling prescriptions, this evidence is highly relevant to show the scheme to defraud TRICARE. Performing consultations while under the influence of drugs and/or alcohol demonstrates the goal was to bilk TRICARE out of money, not perform legitimate services. It also demonstrates the lack of medical necessity and intent of the individual using the drugs and/or alcohol to further the scheme's objective: get as much money as possible out of TRICARE.

To the extent it has not already done so, the government will comply with the Court's prior ruling regarding 404(b) evidence. (ECF 694 at 5.) If the Court views Simmons' motion as seeking anything more than this, it should be denied.

# CONCLUSION

The government respectfully requests that the Court rule on the defendants' second round of pretrial motions in limine as set forth above.

<div style="margin-left: 40%;">

ERIN NEALY COX
UNITED STATES ATTORNEY

*/s/ Douglas B. Brasher*
DOUGLAS B. BRASHER
Assistant United States Attorney
Texas State Bar No. 24077601
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8604
Facsimile: 214-659-8802
Email: douglas.brasher@usdoj.gov

*/s/ Renee M. Hunter*
RENEE M. HUNTER
Assistant United States Attorney
Texas State Bar No. 24072942
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8798
Facsimile: 214-659-8800
Email: renee.hunter@usdoj.gov

*/s/ Ryan Raybould*
RYAN RAYBOULD
Assistant United States Attorney
Kansas State Bar No. 25429
1100 Commerce Street, 3rd Floor
Dallas, Texas 75242
Telephone: 214-659-8713
Email: ryan.raybould2@usdoj.gov

</div>

## CERTIFICATE OF SERVICE

      I hereby certify that on September 20, 2019, I electronically filed the foregoing response with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to counsel of record for all defendants.

                                          */s/ Douglas B. Brasher*
                                          DOUGLAS B. BRASHER